*E. P. Ferris*, and *H. T. Lipperd*, for appellant.

---

## WEST v. FORSYTHE.

GUARDIAN AND WARD.—*Guardian's Bond.*—*Removal of Guardian.*—The failure of a guardian to give a bond sufficient to secure to his ward, when the period of his wardship shall terminate, the amount of a pension coming to the ward from the government, is a sufficient cause for the removal of the guardian, without regard to the fact that the amount of the pension may be needed for the maintenance and education of the ward.

APPEAL from the Clinton Common Pleas.

WORDEN, J.—This was an application by the appellant to remove the appellee, as guardian of the persons and estates of Mary A. Stevenson and William F. Stevenson. Trial by the court, resulting in a finding and judgment for the defendant.

The case comes before us exclusively on the evidence,

which is embodied in a bill of exceptions. The following general facts may be gathered from the evidence.

Thomas J. Stevenson, the father of the wards in question, was killed in the service of the country as a soldier, in the late civil war, leaving a widow and the two children above named. In November, 1865, the appellee, Forsythe, and the widow of the deceased intermarried. At the time of the marriage, the widow was drawing a pension from the United States, but the wards succeeded to the pension after the marriage. It is stated in the complaint that the annual pension coming to the wards is one hundred and forty-four dollars, but the proof does not show the precise amount. It is also stated that they will be entitled to it until they arrive respectively to the age of sixteen years.

On the 27th of November, 1866, Forsythe applied to the clerk of the court below for letters of guardianship for said children, but in his verified statement in writing for that purpose, he made no allusion whatever to the pension due said children. Possibly this was unnecessary, as not coming within the liberal terms of section four of the act on the subject. 2 G. & H. 565.

The clerk issued the letters, and took a bond from Forsythe, with one Nehemiah C. Lovett as his surety, in the penal sum of five hundred dollars. Lovett, at the time the bond was given, was in quite precarious circumstances, and at the time this suit was tried, he had become utterly insolvent and had left the State. From the statement of Forsythe, in his application for letters, it appears that Mary A. was born August 7th, 1858, and William F., January 15th, 1861; so that each has several years' pension yet to draw.

It appears that the two wards are living with Forsythe, and that they are provided for and schooled about like other chilren in that portion of the State; but the evidence has a strong tendency to show that Forsythe, while he is an industrious and temperate man, is hasty, choleric and irritable, and not well fitted to stand *in loco parentis* to these children. One witness testifies that he heard and counted five blows

inflicted by Forsythe, upon some one whom he did not see, but who, under the circumstances detailed, could have been no one but the boy, at the distance of thirty rods. His opinion is that the blows were inflicted with a switch.

Another witness says, " I know the children, and am satisfied he is too severe on them. He presses down on them too close. He is excitable and easy to get mad, and has a vicious way of talking. The boy is a good worker. I don't hardly know whether he pays his way or not, but if any boy can, he does."

Another witness said, " the defendant told him the children were thick-headed like their father; that he had whipped the girl, but she would not mind."

Still another said, " I saw him whip the boy once last spring with a bridle. He whipped him harder than I thought was proper."

Yet another said, " I think he was too hard on them. I saw him whip the boy once pretty heavy. I thought it was more than the child deserved."

Another witness speaks thus: " I am acquainted with the defendant and his wards. He is sober and industrious. He is crabbed and easily excited, and often storms, blusters and halloos at the children. I never saw him abuse them. I think the children are bad. In some cases severity makes the children worse."-

Much evidence was educed as to whether the labor of the children was sufficient for their maintenance.

This evidence had little, if anything, to do with the question involved. Perhaps the defendant was not bound, as their step-father, to maintain the children. His charges for their maintenance, and the services they may perform for him, are matters properly to be considered on the settlement of his account with them as their guardian.

We should, without hesitation, say, on the evidence before us, that the treatment of the children by the defendant, and especially the boy, renders it improper that he should continue to be their guardian, were it not for the domestic rela-

West *v.* Forsythe.

tion that exists between the defendant and the mother of his wards. The children, it is proved, desire to remain where they are; and if that fact were thoroughly established, it might be regarded as a strong circumstance to show that, on the whole, they had not been very badly treated. But the judgment below will have to be reversed on the grounds which we will now proceed to state, and the case will go back for trial *de novo*, where further evidence can be introduced on this branch of the case, if it is desired.

It is quite clear that Forsythe should not continue to act as the guardian of these children and receive on their behalf the bounty or pension due them from the government, without giving a bond which will be ample to secure it to them when the period of their wardship terminates. It may be that the most or all of it will be needed for their maintenance and education. It may be that they will be maintained and educated by the defendant. But, on the other hand, it may be that their labor, as they grow up, will be sufficient for their maintenance, and that the bounty of the government can be saved to them as a little fund with which to start in life. The interest of the wards requires such bond to be given, and that the guardian be removed on failure to give it. The counsel for the appellee, in their brief, say that he did give an additional bond to the acceptance of the clerk, but the record shows nothing of it.

The judgment below is reversed, with costs, and the cause remanded, with instructions to the court below to grant a new trial.

*J. N. Sims* and *C. Sims*, for appellant: