## BARRETT et al. v. SAFETY CASUALTY CO. et al.

### No. 13492.

Court of Civil Appeals of Texas. Dallas.

March 24, 1944.

R. G. Carter and Roy C. Ledbetter, both of Dallas, for appellant.

Walace Hawkins, Earl A. Brown, Chas. B. Wallace, and Geo. W. Allison, all of Dallas, for appellees.

LOONEY, Justice.

The facts involved in this controversy are these: Marlon Lee Barrett, Sr., died of injuries sustained in the course of employment with the Magnolia Petroleum Company, the Safety Casualty Company being the insurance carrier. The deceased was survived by his widow, Ida Ernestine Barrett (at present the wife of Orman Florence), and son, Marlon Lee Barrett, Jr., aged 2½ years. The widow was appointed and qualified as guardian of the person and estate of her minor son, executing and filing bond in the sum of $1,000, being the amount required by order of court.

The final decision and award of the Industrial Accident Board, among other things, directed the Safety Casualty Company to pay the guardian, for the use and benefit of her minor son, $9.68 per week for 360 consecutive weeks from September 20, 1940, aggregating the sum of $3,484.80. Neither party appealed from the award of the Industrial Accident Board and the insurance carrier at no time has contested the right of the minor to the compensation awarded by the Board, but has consistently refused to pay the weekly installments as they accrued, contending that it could not safely do so, as the guardian had not properly qualified; that is, had failed to execute and file bond in an amount at least double the liquidated value of the minor's estate.

Mrs. Barrett, as guardian, instituted suit in the County Court at Law of Dallas County, against the insurance carrier, to recover $164.56, accrued weekly payments of the award, also $100 attorney's fee, and sought the issuance of a mandatory injunction compelling the insurance carrier to make weekly payments to plaintiff as guardian, as they accrued, until the full amount of the award was paid. The suit was successfully defended by the insurance carrier, on the ground that plaintiff had never properly qualified as guardian, hence was not authorized to act as such, for the reason heretofore stated. From the adverse judgment, the guardian appealed, the

appeal being dismissed by this Court for want of jurisdiction.

Subsequently, on October 5, 1942, the instant suit was instituted in the Probate Court of Dallas County by Safety Casualty Company, insurance carrier, as an interested party in the estate of the minor, seeking to have the guardian, now Mrs. Ida Ernestine Florence, removed, unless and until she filed a bond at least double the sum of $3,484.80, being the full amount of the award; and also by supplemental petition filed on May 11, 1943, based upon the facts heretofore set out, prayed for a declaratory judgment, adjudicating the rights, liabilities and respective status of all interested parties, as authorized by an Act of the 48th Legislature. See p. 265, Ch. 164, Acts 1943 Vernon's Ann.Civ.St. art. 2524—1.

On May 11, 1943, all proper, necessary and indispensable parties being before the court (unnecessary to be mentioned here), the Probate Court of Dallas County found that Mrs. Ida Ernestine Florence was the duly and properly qualified and acting guardian of the person and estate of the minor; that the bond of $1,000 originally filed was good, sufficient and legal, but also found that, because of the subsequently maturing insurance installments, the bond should be increased to $2,700; to which judgment, the insurance carrier duly excepted and timely perfected an appeal to the 116th Judicial District Court of Dallas County, and on July 16, 1943, the latter court found that the original bond for $1,-000, which, after the judgment of the Probate Court above mentioned, had been increased to $2,700, was not in law a good and sufficient bond, in that, it was not double the sum of $3,484.80, being the full amount of the award which constituted the estate of the minor; thereupon, proceeded to remove Mrs. Florence as the purported guardian, unless and until she filed bond in double the amount above mentioned, to which she excepted and timely perfected this appeal.

The sole question presented for decision involves the construction of the applicable portion of Art. 4141, Vernon's Civil Statutes, in regard to the amount of the penalty to be written into guardians' bonds; specifically, the question is, should the guardian in the instant case be required to give bond in an amount double the aggregate of the weekly installments; that

is, at least double the sum of $3,484.80, the value of the ward's estate? Prior to 1913, the controlling statute provided that "The bond of the guardian of the estate of a ward shall be in amount equal to double the estimated value of the property belonging to such estate * * *." See Art. 2600, Rev.St. 1895; and Art. 4099, Rev.St. 1911. It will be observed that the statute at that time required the bond of a guardian to be double the estimated value of all property, real and personal, belonging to the estate; but in 1913, the 33rd Legislature amended Art. 4099, Rev.St. 1911 (now Art. 4141), in the respect under consideration, so as to read: "The bond of the guardian of the estate of a ward shall be in amount equal to double the estimated value of the personal property belonging to such estate, plus a reasonable amount to be fixed at the discretion of the county judge, to cover rents, revenues and income derived from the renting or use of real estate belonging to such estate * * *." Thus it will be observed that it was no longer required that the value of real estate per se should be taken into consideration in fixing the amount of the bond of a guardian.

The question presented is one of first impression in this state, and that fact, in our opinion, is significant, in that it indicates that a uniform construction of the statute has heretofore been pursued by Bench and Bar; that is, as requiring the value of solvent obligations to pay money, unmatured as well as matured, to be estimated at their full face value, as basis for determining the amount of bond to be given by the guardian; at least, history of the subject fails to reveal a successful contention to the contrary, although it is common knowledge that, frequently, estates are made up, not only of matured but of unmatured obligations to pay money. The award made by the Industrial Accident Board to the minors in question is simply an obligation to pay a stated amount in weekly installments and, in our opinion, cannot be differentiated from any other legal obligation to pay money in future installments. The controlling statute, in our opinion, contains no language upon which there could be impinged a different construction. In requiring the guardian to give bond in an amount double the estimated value of the personal property belonging to the ward, we think, by necessary implication, the estimated value of all money ob-

ligations, whether matured or unmatured, must enter into the estimate. Such an intention is explicitly manifested where real property belonging to the estate is sold for part cash and part on credit. Although, as shown above, after the adoption of the amendment in 1913, the estimated value of real estate belonging to the ward was not required to be taken into consideration in fixing the amount of the guardian's bond, yet the amending statute provided that when real estate is sold, the sale shall not be confirmed, "nor shall the title of the ward to such real estate pass to the purchaser, unless and until it shall first be found and determined by the Court, by an order duly made and entered to that effect, that the guardian's general bond is in an amount equal to double the value of the personal property then on hand, including the amount for which said real estate may be sold * * *," See Art. 4201, Vernon's Ann.Civ.St., and before a sale of the ward's real estate can be consummated under circumstances described in Art. 4201a, Vernon's Ann.Civ.St., "* * * the court shall require the guardian to make and file a satisfactory bond to be approved by the court in an amount equal to twice the amount for which the property was sold * * *." The statute, Art. 4204, further provides that, when real estate is sold by a guardian partly on credit, "the cash payment shall not be less than one-third of the purchase price and the purchaser shall execute notes for the deferred payments maturing in equal annual amounts, the last note to mature not later than five years from date of deed * * *." So, we think it quite obvious that the legislative intent throughout, manifested implicitly and explicitly, was to require the value of all moneyed obligations belonging to the estate of the ward, whether mature or unmature, to be estimated in determining the amount of the guardian's bond.

As before stated, this precise question, so far as we have been able to ascertain, has never been directly passed upon in this state, yet in several decisions involving the statute, our courts have intimated that such is the meaning of the statute. In the case of McAdams v. Wilson, Tex.Civ.App., Amarillo, 164 S.W. 59, 61, Chief Justice Huff, concluding the discussion, used this language—he said: "The bond (guardian's) must be double its value (the property involved), otherwise it is not a statutory bond."; citing Moore v. Hanscom, Tex.Civ. App., 103 S.W. 665, 672. In the case cited, the San Antonio Court, opinion by Judge Fly, passing upon a case in which the county court had attempted to reduce the guardian's bond to a sum less than the value of the estate, said: "If the county court had no authority to reduce the guardian's bond to a sum less than the value of the estate, and such action was in violation of the statute which fixes the bond at a sum double the estimated value of the estate, then its order reducing the bond was null and void, and could be attacked in a collateral proceeding."

However, the identical question has been passed upon in other jurisdictions. In 39 C.J.S., Guardian and Ward, § 34, it is stated: "Where the wards have a pension, the guardian should be required to give a bond sufficient to cover the entire amount of the pension until the majority of the wards, although the pension money may be used from time to time for their support." This text was based upon the case of West v. Forsythe, 1870, 34 Ind. 418. That case was instituted to remove a guardian because of the insufficiency of his bond. The father of two minors died during the Civil War, his widow remarried, and the stepfather attempted to qualify as guardian of the estate of the minors, which consisted of a pension allowed by the Government of $140 per annum until each minor attained the age of sixteen. In announcing its decision, the court used language applicable to the case under consideration; it said: "It is quite clear that Forsythe should not continue to act as the guardian of these children and receive on their behalf the bounty or pension due them from the government, without giving a bond which will be ample to secure it to them when the period of their wardship terminates * * *."

The judgment of the court below, in our opinion, was correct and should be affirmed; it is so ordered.

Affirmed.